In re Vern DUNCKLEY, also known as Vernon Wayne Dunckley, also known as Vern W Dunckley, also known as V Wayne Dunckley, also known as Vern Wayne Dunckley, also known as V W Dunckley, also known as Vernon W Dunckley, also known as Vernon Dunckley, and Elyse Dunckley, also known as Elyse Ra Dunckley, also known as Elyse R Dunckley, also known as E Ra Dunckley, also known as E R Dunckley, Debtors.

Vern Dunckley and Elyse Dunckley, Appellants,

v.

Robertson B. Cohen, Trustee, Appellee.

In re Richard Edward Borgman, also known as Richard E. Borgman, also known as Rich Edward Borgman, also known as Rich E. Borgman, also known as R.E. Borgman, Debtor.

Richard Edward Borgman, Appellant,

v.

Robertson B. Cohen, Trustee, Appellee.

BAP Nos. CO–10–057, CO–10–079.
Bankruptcy Nos. 09–32711, 09–32719.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

July 11, 2011.

Stephen H. Swift, Colorado Springs, CO, for Appellants.

Robertson B. Cohen, pro se.

Before MICHAEL, NUGENT, and THURMAN, Bankruptcy Judges.

NUGENT, Bankruptcy Judge.

What does the word "attribute" mean? Colorado Revised Statute 13–54–102 exempts the "full amount" of a debtor's federal income tax refund that can be "attributed to" to the child tax credit. In these cases, the debtors exempted the portion of their federal income tax refunds attributed to the child tax credit, but the Trustee objected.[1] The bankruptcy courts sustained both objections, concluding that the child tax credit does not constitute property of the estate and that because the credit itself is non-refundable, none of the refunds can be "attributed" to it. Recognizing that all five sitting bankruptcy judges in Colorado have so held, our reading of the exemption statute requires that we REVERSE.[2]

## I. Appellate Jurisdiction and Standard of Review

We have jurisdiction over these appeals. Appellants perfected their appeals from the bankruptcy courts' final orders, and the parties have not elected to have the appeals heard by the United States District Court for the District of Colorado.[3]

We review these orders *de novo*. There are no factual disputes or allegations of

factual error, leaving us to answer a question of law.[4]

## II. Facts

Appellant Robert E. Borgman ("Borgman") filed his Chapter 7 case on October 26, 2009. On his Schedule C, Borgman claimed his 2009 federal tax refund "including child tax credit, earned income credit and additional child tax credit" exempt.[5] Borgman's 2009 federal tax return reported wage withholding of $1,328.[6] His tax liability on regular income was $818 but he was allowed to take $818 of his $1,000 child tax credit against the taxes due, leaving him with no tax due.[7] He also claimed a making work pay credit of $400, an earned income credit of $1,860, and an additional child tax credit of $182, yielding him a refund of $3,770.[8] The Trustee agreed that the portions of Borgman's tax refund attributable to the earned income credit and the additional child tax credit were exempt, but objected to Borgman's claimed exemption of the $818 generated by the child tax credit. On October 26, 2009, 81.92 percent of the year had elapsed.

Appellants Vern and Elyse Dunckley are married and have two minor, dependent children. They also filed their Chapter 7 case on October 26, 2009 and exempted their 2009 federal tax refund "including child tax credit and earned income credit."[9] Their 2009 federal return reported

1. Robertson B. Cohen is the Chapter 7 trustee in both cases. Accordingly, the caption in CO–10–057 is hereby ORDERED AMENDED to so reflect his Trustee status.

2. This Court heard oral argument in these cases on May 17, 2011.

3. 28 U.S.C. § 158(b); Fed. R. Bankr.P. 8001(e); Fed. R. Bankr.P. 8002(a).

4. *Manchester v. Annis (In re Annis)*, 232 F.3d 749, 751 (10th Cir.2000) (lower court's interpretation of statute reviewed *de novo* ).

5. *Schedule C,* in Appellant Borgman's Appendix ("Borgman App.") at 29.

6. *Form 1040 (2009)* at *l.* 61, *in* Borgman App. at 32.

7. *Id.* at *ll.* 46, 51, and 55.

8. *Id.* at *ll.* 63, 64a, 65, and 73a.

9. *Schedule C,* in Appellants Dunckleys' Appendix ("Dunckley App.") at 55.

wage withholding of $8,447.[10] Their tax liability on regular income was $6,631 and after deducting a $2,000 child tax credit and a $445 child care credit, they owed total tax of $4,186.[11] After applying their wage withholding to that amount, the Dunckleys received a refund of $4,261.[12] The parties stipulated that the estate's share of the debtors' tax refund was 81.92 percent.[13] As in the Borgman case, the Trustee objected to the exemption of the $2,000 that arose from the child tax credit.[14]

Both bankruptcy judges sustained the Trustee's objections, finding that because the child tax credit can only reduce income tax liability to zero and does not entitle the taxpayer to receive an additional payment (like the earned income credit does), the "Non-refundable Child Tax Credit does not give rise to a tax refund 'attributed to ... a child tax credit' within the meaning of Colo.Rev.Stat. § 13–54–102(o)."[15] The debtors appealed.

## III. Analysis

While some understanding of the nature of the child tax credit is important to this case, interpreting and applying the Colorado statute requires us to focus on its words. Ultimately, this case is less about tax and more about the Colorado exemption itself and its application in bankruptcy.

The Colorado "child tax credit" exemption statute states: "(1) The following property is exempt from levy and sale under writ of attachment or writ of execution ... (o) The *full amount* of any federal or state income tax refund *attributed to* an earned income tax credit or *a child tax credit* [.]"[16] The balance of the provisions of Colorado Revised Statute 13–15–102 exempt various kinds of personal property, both tangible and intangible, from execution and attachment by a creditor. No Colorado state court has published an opinion interpreting this subsection. In general, Colorado's appellate courts encourage the liberal construction of its exemption laws for the benefit of judgment debtors.[17] Interpreting this statute turns on defining the verb "attribute." Webster's dictionary defines this word as "to explain as caused or brought about by[;] [to] regard as occurring in consequence of

---

**10.** *Form 1040 (2009)* at *l.* 61, *in* Dunckley App. at 59.

**11.** *Id.* at *ll.* 46, 51, 48, and 55.

**12.** *Id.* at *l.* 73a.

**13.** *Transcript of July 7, 2010, Hearing ("Tr.")* at 18–22, *in* Dunckley App. at 37–41. There was no such stipulation in Borgman's case. As the Dunckleys filed their bankruptcy petition on the same day as Borgman, the Dunckleys' estate's share would also be 81.92 percent.

**14.** *Objection to Claim of Exemption, in* Dunckley App. at 11.

**15.** *Order dated December 8, 2010, in* Borgman App. at 24; *Tr.* at 24, *ll.* 6–10, *in* Dunckley App. at 43 ("[N]one of the refund is attributable to the child tax credit ... because that credit can only ... offset against tax liability, and is never part of a refund by the nature of what the Treasury gives the taxpayer by way of rights to a child tax credit.").

**16.** Colo.Rev.Stat. § 13–54–102(1)(o) (2009) (emphasis added). The Colorado legislature added the child tax credit to its exemption statute in 2007. S.B. 07–158, Ch. 226, § 3 (Colo. 2007). There is no legislative history explaining the provision, nor any Colorado state case interpreting it.

**17.** *El Jebel Shrine Ass'n v. McGlone,* 93 Colo. 334, 26 P.2d 108 (Colo.1933) (en banc); *Borrayo v. Lefever,* 159 P.3d 657, 659 (Colo.App. 2006) ("Exemption statutes are generally afforded a liberal construction so as to achieve their purposes.").

or on account of." [18] Thus, this statute can be read to exempt that part of the refund that is "caused or brought about" by the child tax credit.

Nevertheless, all of the bankruptcy judges sitting in Colorado have concluded that, because the child tax credit is a "nonrefundable" credit, no part of a tax refund can be attributed to it. The child tax credit is established by § 24 of the Internal Revenue Code which provides in pertinent part—

(a) Allowance of credit.—There shall be allowed as a credit against the tax imposed by this chapter for the taxable year with respect to each qualifying child of the taxpayer for which the taxpayer is allowed a deduction under section 151 an amount equal to $1,000.

(b) Limitations.—

(1) Limitation based on adjusted gross income.—The amount of the credit allowable under subsection (a) shall be reduced (but not below zero) by $50 for each $1,000 (or fraction thereof) by which the taxpayer's modified adjusted gross income exceeds the threshold amount. For purposes of the preceding sentence, the term "modified adjusted gross income" means adjusted gross income increased by any amount excluded from gross income under section 911, 931, or 933.

(2) Threshold amount.—For purposes of paragraph (1), the term "threshold amount" means—

(A) $110,000 in the case of a joint return,

(B) $75,000 in the case of an individual who is not married,

(C) $55,000 in the case of a married individual filing a separate return.

For purposes of this paragraph, marital status shall be determined under section 7703.

(3) Limitation based on amount of tax.—In the case of a taxable year to which section 26(a)(2) does not apply, the credit allowed under subsection (a) for any taxable year shall not exceed the excess of—

(A) the sum of the regular tax liability (as defined in section 26(b)) plus the tax imposed by section 55, over

(B) the sum of the credits allowable under this subpart (other than this section and sections 25A(i), 25B, 25D 30, 30B, and 30D) and section 27 for the taxable year.[19]

Thus, the extent to which the debtors may avail themselves of the child tax credit is limited by their income as well as their tax liability.[20] The child tax credit is limited to the amount of a taxpayer's regular tax liability after adjustment for any alternative minimum tax he may owe and the application of the other credits enumerated in § 24(b)(3)(B). A taxpayer must have actual tax liability in order to benefit from the child tax credit. If the taxpayer's other § 24(b)(3)(B) credits equal or exceed his adjusted tax liability on Line 46, then he cannot take the child tax credit. If the taxpayer's maximum

**18.** *Webster's Third New International Dictionary* 142 (1976).

**19.** 26 U.S.C. § 24 (February 17, 2009). All future references to "Section" or "§ " are to the Internal Revenue Code, 26 U.S.C., that applied during the tax year a issue, unless otherwise noted.

**20.** Neither Borgman's nor the Dunckleys' adjusted gross income exceeded their respective threshold amount, thus § 24(b)(1) and (2) do not apply.

allowed child tax credit exceeds his tax liability as adjusted, the taxpayer may only use that credit up to that liability. But eligible taxpayers may claim the unused portion of the child tax credit as a refundable credit referred to as the additional child tax credit on Line 65.[21]

The Colorado bankruptcy courts have uniformly held that the Colorado "child tax credit" exemption is inapplicable to the non-refundable portion of the credit.[22] Those courts focus on whether the credit itself is property of the estate and whether the credit actually places funds in the hands of the debtor. Their position is most thoroughly articulated in *In re Landgrebe*.[23] There the court first concluded that only property that is property of the estate may be claimed as exempt. Relying on other courts that had determined that the child tax credit is not property of the estate,[24] the *Landgrebe* court held that because the debtors never had a legal entitlement to claim a refund from the non-refundable credit, no part of the refund can be attributed to it and, therefore, the credit itself is not a separate interest in property that becomes property of the estate.[25] The *Landgrebe* court also concluded that because the child tax credit is "non-refundable," a tax refund cannot be "attributed" to it because, unlike the refundable earned income credit, the child tax credit does not "eventually put funds into the hands of a debtor from which he may support himself and his family."[26] As a creditor could never "attach or levy" on the non-refundable portion of the credit, it is not protected by the Colorado statute. With some variations, *Landgrebe's* analysis forms the basis for the appealed orders in these two cases.

We respectfully disagree. We first note that whether the credit itself is included in the property of the estate is not the issue here. Whether or not the credit becomes estate property is a different question than whether the refund it causes is. Tenth Circuit authority has long since settled that a tax refund due on the date of the petition is part of the property of a debtor's estate.[27]

The Colorado legislature did not distinguish between the refundable and non-refundable portions of the credit. Indeed, its use of the phrase "full amount" suggests to us that any part of a refund that is caused by the child tax credit is exempt. The Trustee's reliance on *Klostermeier* is misplaced here because of the differences in the Ohio exemption statute's wording. The Ohio statute exempts "payments un-

**21.** See 26 U.S.C. § 24(d) (Portion of credit refundable); *Form 1040 (2009)* at *l.* 65.

**22.** *See, e.g., In re Camilletti,* No. 07–25140 (Aug. 19, 2008) (J. Brooks); *In re Sanford,* No. 08–11235 (Dec. 19, 2008) (J. Tallman); *In re Landgrebe,* No. 08–26271 2009 WL 3253933 (Bankr.D.Colo. Sept. 23, 2009) (J. Brown); *In re Nichols,* No. 10–10949 (June 14, 2010) (J. Campbell); *In re Waterhouse,* No. 10–15461 (Sept. 13, 2010) (J. Romero).

**23.** *Landgrebe,* 2009 WL 3253933.

**24.** *See, e.g., In re Klostermeier,* No. 08–36700, 2009 WL 1617090 (Bankr.N.D.Ohio May 29, 2009) and *In re Donnell,* 357 B.R. 386 (Bankr. W.D.Tex.2006).

**25.** *Landgrebe* at *2–3.

**26.** *Id.* at *3.

**27.** *In re Barowsky,* 946 F.2d 1516, 1518 (10th Cir.1991) (prepetition portion of a debtor's tax refund held property of the estate); *Williamson v. Jones (In re Montgomery),* 224 F.3d 1193, 1195 (10th Cir.2000) (earned income credits treated like tax refunds and held property of estate). *See also Segal v. Rochelle,* 382 U.S. 375, 380, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966) (debtors' loss-carryback refund regarded as property of the estate).

der § 24 [the Child Tax Credit and the Additional Child Tax Credit] or § 32 [the Earned Income Credit]."[28] Contrast the Ohio statute's use of the term "payment" with the Colorado statute, which exempts the "full amount" of a refund that is "attributed to" the credit. The language "payment under § 24" inferentially points to only the refundable portion of the credit, while "attributing" the "full amount" of a refund to the credit suggests that the Colorado legislature intended to exempt any part of the refund that was caused by its application.[29]

By requiring that the refund and credit be "directly" correlated, the bankruptcy courts have too narrowly interpreted the term "attributed."[30] The Colorado statute does not say that. Applying any part of the child tax credit directly affects the refund. If an otherwise qualified taxpayer does not avail himself of the child tax credit on Line 51, the amount of tax owed on Line 60 ("your total tax") will increase, and accordingly, the refund will decrease. Likewise, if the taxpayer does not claim the additional child tax credit on Line 55 as a payment, his refund will decrease. In the case of either credit, the refund changes depending upon whether the debtor applies the credit or not.

Finally, we disagree with the bankruptcy courts' conclusion that the nonrefundable portion of the child tax credit does not put funds into the hands of a debtor. A tax refund is the difference between "payments" minus tax liability as adjusted by various credits, including the child tax credit. The child tax credit is part of the equation and its application will invariably cause the refund to increase. Had Borgman not taken the child tax credit, his refund would have been reduced by $1,000 to $2,770.[31] Likewise, had the Dunckleys not taken the child tax credit, their refund would have been $2,000 less, or $2,661.[32] Because they took the child tax credit, an

28. Ohio Rev.Code Ann. § 2329.66(A)(9)(g) (2008) reads: "Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, ... [t]he person's interest in ... [*p*]*ayments under section 24 or 32* of the 'Internal Revenue Code of 1986,' 100 Stat. 2085, 26 U.S.C. 1, as amended." (Emphasis added.) changes depending upon whether the debtor applies the credit or not.

29. We note that the Sixth Circuit BAP recently adopted the view of numerous Ohio cases like *Klostermeier* that have held that debtors cannot exempt the non-refundable portion of the child tax credit because it is not a "payment" under Ohio Revised Code § 2329.66(A)(9)(g). *See In re Zingale*, 451 B.R. 412 (6th Cir. BAP 2011). *Zingale* interprets the same Ohio statute that is referred to in *Klostermeier* and quoted in footnote 28, *supra*. Because Colorado's exemption statute does not expressly exempt "*payments* under section 24 [the child tax credit]," *Zingale* is unpersuasive here.

30. *Tr.* at 12, *ll.* 12–20, *in* Dunckley App. at 31 ("And, I have chosen, as did Judge Brown and the cases she follows to interpret the word 'attributable to,' [to] mean directly attributable to such that if there is no right to get that money, if it gets swallowed up in an offset, which is what a normal tax credit does, and that's what the child tax credit is, unlike the additional child tax credit, and unlike the earned income credit, which are effectively a subsidy that's handled through the Internal Revenue Service.").

31. Simple arithmetic leads us to this conclusion. We did not rely upon the affidavit of Borgman's accountant to reach this conclusion. In both cases, the Appellants submitted an affidavit from their accountant to support their exemption. We note that these affidavits were treated differently. In Borgman's case, the affidavit met with an objection, which the bankruptcy court sustained. In the Dunckleys' case, their accountant's affidavit went unopposed.

32. *See Affidavit of Catherine W. Bullock, CPA* at ¶ 12, *in* Dunckley App. at 49.

additional $1,000 landed in Borgman's hands and an additional $2,000 landed in the Dunckleys' hands. Those differences may be directly "attributed to" the credit.

## IV. Conclusion

Based on our interpretation of the plainly worded Colorado exemption statute, the amount of the refund that is caused by or "attributed to" the application of the child tax credit in either of its forms is exempt from attachment or levy under Colorado law and is therefore exempt. Determining the "full amount" of what is attributable to the credit is as straightforward as comparing the debtor's actual tax return with the credit applied to a hypothetical return without the credit applied. We therefore REVERSE.