RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0277p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

────────────────

JPMORGAN CHASE BANK, N.A.,

*Plaintiff-Appellee*,

*v.*

No. 18-2089

LARRY J. WINGET; LARRY J. WINGET LIVING TRUST,

*Defendants-Appellants*.

────────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
Nos. 2:08-cv-13845; 2:15-cv-13469—Avern Cohn, District Judge.

Argued: October 24, 2019

Decided and Filed: November 7, 2019

Before: SUTTON, COOK, and THAPAR, Circuit Judges.

────────────────

## COUNSEL

**ARGUED:** John J. Bursch, BURSCH LAW PLLC, Caledonia, Michigan, for Appellants. James W. Ducayet, SIDLEY AUSTIN, LLP, Chicago, Illinois, for Appellee. **ON BRIEF:** John J. Bursch, BURSCH LAW PLLC, Caledonia, Michigan, John E. Anding, Thomas V. Hubbard, DREW, COOPER & ANDING, P.C., Grand Rapids, Michigan, for Appellants. James W. Ducayet, Kendra L. Stead, SIDLEY AUSTIN, LLP, Chicago, Illinois, for Appellee.

────────────────

## OPINION

────────────────

THAPAR, Circuit Judge. As is so often the case, the simplest answer here is also the correct one. Over fifteen years ago, the Larry J. Winget Living Trust agreed to guarantee a loan issued by JPMorgan Chase Bank. The Trust now owes the bank hundreds of millions of dollars.

The question here is whether Chase can recover that money from the property held by the Trust. The district court said it could.  We affirm.

Our court has previously decided six appeals arising out of this case and related litigation. *See JPMorgan Chase Bank, N.A. v. Winget*, 920 F.3d 1103 (6th Cir. 2019); *JP Morgan Chase Manhattan Bank v. Winget*, 704 F. App'x 410 (6th Cir. 2017); *JPMorgan Chase Bank, N.A. v. Winget*, 678 F. App'x 355 (6th Cir. 2017); *JPMorgan Chase Bank, N.A. v. Winget*, 602 F. App'x 246 (6th Cir. 2015); *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565 (6th Cir. 2008); *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577 (6th Cir. 2007).  These opinions already tell the tale of JPMorgan Chase and Larry Winget.  So we'll just provide a synopsis.

In the late 1980s, Winget created the Larry J. Winget Living Trust.  Under the trust agreement, Winget retained the right to revoke the Trust at any time and to receive any income generated by the trust property during his lifetime.  He also served as the trustee with broad powers to manage the Trust.

Years later, Venture Holdings Company (a company owned by Winget) sought an almost half-billion-dollar loan from a group of lenders (now led by Chase).  Winget agreed to guarantee the loan both in his individual capacity and as a representative of the Trust.  So when Venture eventually defaulted on the loan, Chase sued Winget and the Trust.

This court has already decided that the guarantee agreement limited Winget's personal liability to $50 million but did not limit the Trust's liability.  *Winget*, 602 F. Appx. at 258–59. The district court entered judgment to that effect over four years ago.  Instead, this appeal arises out of Chase's effort to collect on that judgment.  Winget has already paid Chase $50 million, so he no longer owes the bank any money (at least for the guarantee).  But the Trust has yet to satisfy *its* obligation under the agreement and now owes the bank over $750 million.  The district court held that Chase could recover that money from the property held by the Trust and certified its decision as final under Rule 54(b).  This appeal followed.

Once again, the question here is whether a creditor can recover against a trust from the property held by the trust.  Michigan law (as well as hornbook trust law) confirms the intuitive answer:  the creditor can.  That's because trusts can enter into contracts no different than anyone

else. And when they do, they honor those obligations—sometimes voluntarily, sometimes not—through the trust property.

By way of brief review, a fundamental feature of a trust is the separation of legal and equitable title. In most cases, a "trustee" holds the legal title (*i.e.*, the power to manage the trust property) on behalf of a "beneficiary," who holds the equitable title (*i.e.*, the right to benefit from the trust property). *See, e.g.*, *In re Blasingame*, 920 F.3d 384, 393 (6th Cir. 2019); *Pierowich v. Metro. Life Ins. Co.*, 275 N.W. 789, 790 (Mich. 1937). The power to manage the trust property typically gives the trustee the power to do a lot of things, including to enter into contracts on the trust's behalf. *See* Mich. Comp. Laws §§ 700.7817, 700.7910(3). And when the trustee does so, he doesn't act with impunity. (Otherwise, why would anyone make an agreement with a trust?) Rather, he makes *the trust* liable on the contract.

Trusts usually honor their obligations from the property they hold. That saves everyone (courts included) a lot of time and expense. But if they don't, their creditors aren't just out of luck. That wouldn't make much sense. Instead, the creditors can sue to recover from the trust property—just like with any other contract. There's ample authority for this point. *See, e.g.*, Mich. Comp. Laws § 700.7910(3); *Bankers' Tr. Co. of Muskegon v. Forsyth*, 254 N.W. 190, 192 (Mich. 1934); *Bogert's Trusts and Trustees* § 715, at 303–05 (3d ed. 2009); 4 *Scott and Ascher on Trusts* §§ 26.2, 26.5.4, at 1875–78, 1905–06 (5th ed. 2007); 12 *Williston on Contracts* § 35:81, at 777 (4th ed. 2012); Restatement (Third) of Trusts § 105 (2012). So although the terminology may seem complicated, the takeaway is quite simple: a party who has a contract with a trust can recover from the property held by the trust.

That quick review tells us all we need to decide this case. Under both Michigan law and the trust agreement, Winget had the power to enter into contracts on behalf of the Trust. *See* Mich. Comp. Laws § 700.7817. Winget did so with Chase. And now the bank wants to collect on that agreement. The district court correctly held that it could do so from the trust property.

Perhaps understandably (given the stakes of the case), Winget resists this straightforward conclusion. The short of his argument is that *he* "owns" the trust property because he can revoke the Trust at any time. *See generally* Restatement (Third) of Trusts § 74 (2007). Thus, he says,

Chase can't take the property to satisfy *the Trust's* obligation. The short of our answer is that it doesn't matter who "owns" the trust property (at least as trust law uses that term). After all, trusts usually don't "own" property. *See, e.g.*, *Wellpoint, Inc. v. Comm'r*, 599 F.3d 641, 648 (7th Cir. 2010); Restatement (Third) of Trusts § 2 cmt. d (2003). So if ownership mattered, creditors of a trust—revocable or not—could almost never recover from the trust property. And that would surely surprise the many authorities who have written to the contrary.[1] *See, e.g.*, *Bankers' Tr. Co.*, 254 N.W. at 192–93; *Talmer W. Bank v. Stewart*, Nos. 316678 & 317420, 2014 WL 7003885 (Mich. Ct. App. Dec. 11, 2014) (per curiam).

Nor does it matter (as Winget suggests it does) that he pays taxes on the trust property or that revocable trusts have been described as "will substitutes." *See, e.g.*, 26 U.S.C. § 674(a); *Bullis v. Downes*, 612 N.W.2d 435, 438 (Mich. Ct. App. 2000). On the former point, tax law may not treat revocable trusts as separate entities, but trust law certainly does. *See Bogert's Trusts and Trustees* § 264.5, at 19–20 (rev. 3d ed. 2012); Restatement (Third) of Trusts § 25 (2003). On the latter, revocable trusts might serve similar functions as wills, but that does not make them the same as wills. For instance, wills cannot enter into contracts with other parties or be sued when they breach their obligations. (Technically, the other party usually sues the trustee in his representative capacity, not the trust directly. But Winget has not raised that point here.) In short, Winget's assorted arguments tell us little.

Winget also points to various statutes that deal with how creditors can recover against a "settlor" (*i.e.*, the person who creates the trust). These statutes *allow* the creditors of the settlor to recover from the trust property if the trust is revocable. *See* Mich. Comp. Laws §§ 556.128, 566.131(1), 700.7506(1)(a). As a corollary, Winget reasons, these statutes must *prohibit* the creditors of the trust from recovering from the trust property as well. But the statutes say nothing of the sort. Under a revocable trust, the settlor usually holds the beneficial interest in the trust

---

[1]To be sure, this does not resolve whether Winget could revoke the Trust and simply remove all the trust property. Winget tried to do exactly that back in 2014 but later reversed course. In related proceedings, the district court held that this revocation was a fraudulent conveyance under Michigan law. *See* Mich. Comp. Laws § 566.35. But if Winget "owns" the trust property, that may affect whether the district court was correct. At oral argument, we asked the parties whether we should address this issue in the current appeal. But they did not pursue that suggestion. Our decision therefore does not address the fraudulent conveyance issue.

property (*e.g.*, the right to receive the income generated by the property). So these statutes merely codify the principle that creditors can recover from the beneficial interest. *See generally* Restatement (Third) of Trusts § 56 (2003). They do not repeal the principle that creditors of the trust can recover from the trust property as well.

Winget next cites various cases that say that trust property cannot be used to satisfy a trustee's personal liabilities. *See, e.g.*, *Begier v. IRS*, 496 U.S. 53, 59 (1990); *In re Cannon*, 277 F.3d 838, 849–52 (6th Cir. 2002); *In re Omegas Grp., Inc.*, 16 F.3d 1443, 1449 (6th Cir. 1994). But the trust property here would not be used to satisfy Winget's personal liability. Rather, it would be used to satisfy the Trust's liability. So these cases are inapposite.

Lastly, Winget relies on an unpublished, out-of-circuit decision, arguing that it presents a "nearly identical scenario" to this case. *See In re Brock*, 587 F. App'x 485, 488–89 (10th Cir. 2014). But that decision addressed whether a creditor of a trust can recover from the property held by the settlor individually. (As the decision reasoned, the creditor can't.) It did not address whether a creditor of a trust can recover from the property held by the trust itself. (As we've already explained, the creditor can.) In sum, Winget has not pointed to any authority that provides for his desired outcome.

One final note. To the extent that Winget challenges not only *whether* Chase can recover from the trust property but also *how* it may do so, he has offered no good reason to think that the district court used the wrong method here. *See* Mich. Comp. Laws § 450.4507. Chase has a judgment allowing it to recover from the trust property. And Michigan has given its courts "extremely broad" authority to execute on their judgments. *Rogers v. Webster*, No. 84-1096, 1985 WL 13788, at *1 (6th Cir. Oct. 22, 1985) (per curiam). So Winget's argument on this front (if any) also fails.

***

Two years ago, our court described a prior appeal as "the latest episode in a long-running saga that must now come to a close." *Winget*, 678 F. App'x at 356. We now know better than to think that our decision today will close the book for good. But at least we're a chapter closer. We affirm.