**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 31, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ERIC C. RAJALA, Trustee in Bankruptcy
for the Estate of Generation Resources
Holding Company, LLC,

      Plaintiff - Appellant/Cross-Appellee,

v.

ROBERT H. GARDNER; R. JAMES
ANSEL; WILLIAM W. STEVENS,

      Defendants - Appellees/Cross-
      Appellants,

ROBBIN M. GARDNER;  VIRGINIA Z.
ANSEL; AKIKO N. STEVENS;
LOOKOUT WINDPOWER HOLDING
COMPANY, LLC, a Missouri limited
liability company; FORWARD
WINDPOWER HOLDING COMPANY,
LLC, a Missouri limited liability company;
STEVENS FAMILY INVESTMENT
COMPANY, LLC, a Missouri LLC,

      Defendants - Appellees,

GARDNER FAMILY INVESTMENT
COMPANY, LLC, a Missouri LLC;
WINDFORCE HOLDINGS, INC.,

      Consolidated Defendants -
      Appellees,

and

No. 14-3241
(D.C. No. 2:09-CV-02482-EFM)
(D. Kan.)

FREESTREAM CAPITAL, LLC,

      Consolidated Defendant.

_____

ERIC C. RAJALA, Trustee in Bankruptcy
for the Estate of Generation Resources
Holding Company, LLC,

      Plaintiff - Appellee,

v.

ROBERT H. GARDNER; R. JAMES
ANSEL; WILLIAM W. STEVENS,

      Defendants - Appellants.

No. 14-3271
(D.C. No. 2:09-CV-02482-EFM)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **GORSUCH**, **EBEL**, and **BACHARACH**, Circuit Judges.
_____

**INTRODUCTION**

This Order and Judgment addresses three appeals, all from the same case. We

assume the parties and district court are familiar with the voluminous facts of the

case; therefore we omit a recitation of the facts. The first appeal, 14-3241, is brought

by the Trustee for the estate of Generation Resources Holding Company, LLC

(GRHC), who appeals the district court's summary judgment order dismissing, before

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

2

trial, his five fraudulent transfer claims against Defendants/Appellees/Cross-Appellants concerning two wind power projects, Forward Windpower (FW) and Lookout Windpower (LW). The second two appeals are brought by Defendants. Defendants' first appeal, 14-3253, concerns the denial of their motion for judgment as a matter of law after the district court's jury verdict. Defendants' second appeal, 14-3271, challenges the district court's prejudgment interest award. All of the appeals were timely filed after final judgments. Exercising jurisdiction under 28 U.S.C. § 1291, we REVERSE in appeal 14-3241 and REMAND for further proceedings consistent with this order. We AFFIRM in appeals 14-3253 and 14-3271.

## LEGAL DISCUSSION

### I. The district court erred when it granted summary judgment for the Defendants on the Trustee's fraudulent transfer claims (Appeal 14-3241)

The issue in the first appeal stems from the district court's granting of summary judgment for Defendants on the Trustee's fraudulent transfer claims. The Tenth Circuit reviews a district court's summary judgment determination de novo, viewing the evidence in the light most favorable to the nonmoving party. Estate of B.I.C. v. Gillen, 710 F.3d 1168, 1172 (10th Cir. 2013). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]e view the evidence and draw reasonable inferences therefrom in the

3

light most favorable to the nonmoving party." Garrison v. Gambro, Inc., 428 F.3d 933, 935 (10th Cir. 2005).

The Trustee asserted that GRHC's transfer of its interests in the FW and LW projects was fraudulent because GRHC never received reasonably equivalent value or, in the alternative, Defendants transferred the interests with actual intent to hinder creditors. The basis of these claims was 11 U.S.C. § 544(b) and the accompanying Kansas version of the Uniform Fraudulent Transfer Act (KUFTA), Kan. Stat. §§ 33-201 to 33-212. Under § 544(b), the Trustee steps into the shoes of a hypothetical creditor and can assert state law claims to avoid transfers (11 U.S.C. § 550 is used to recover the transfers). Under § 544(b), state law—Kansas here—defines whether a claim or interest can be considered a property right.

### a. The district court erred when it found that there was no genuine dispute that GRHC did not hold a property interest in FW or LW

The district court held that the Trustee never established that GRHC had any property interest in the FW or LW projects that Defendants sold to Edison nor any contingent interest in proceeds from the sale of FW or LW. The district court relied on three points in making this decision: (1) the Memorandum of Understanding (MOU) between GRHC and Edison for the sale of FW and LW did not vest GRHC with an interest in the purchase price of the projects; (2) earning an interest does not constitute property of the debtor; and (3) GRHC's referring to itself as the developer does not constitute a property interest. The district court erred in granting summary judgment for Defendants because these pieces of evidence present, at a minimum, a

4

genuine issue of material fact for the jury to decide whether GRHC had any property interest in FW or LW.

The bankruptcy estate comprises "all legal or equitable interests of the debtor in property as of the commencement of the case." In re Borgman, 698 F.3d 1255, 1257 (10th Cir. 2012) (quoting 11 U.S.C. § 541(a)(1)). "[T]he scope of § 541 is broad and should be generously construed, and that an interest may be property of the estate even if it is novel or contingent." In re Dittmar, 618 F.3d 1199, 1207 (10th Cir. 2010). "[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within reach of 11 U.S.C. § 541." Id. "Kansas law recognizes that contingent interests are property interests." Id. at 1204.

Courts in this circuit have declared several contingent and uncertain interests to be property interests under Kansas law.[1] There were ample, uncontroverted facts in the record concerning GRHC's interest in FW: (1) Defendants represented to the Foundations that FW was a wholly owned subsidiary of GRHC and that GRHC was developing several wind energy sites; (2) GRHC's letter to the Foundations stating

---

[1] See Dittmar, 618 F.3d at 1206 (holding that employees' equity participation plan, even though the terms were uncertain at time of employees' bankruptcy filings, still constituted part of their bankruptcy estates); In re Howley, 446 B.R. 506 (Bankr. D. Kan. 2011) (holding that a right to future per capita payments to a tribal member from Indian gaming was properly part of the bankruptcy estate and discussing several other interests properly part of a bankruptcy estate: (1) the debtor's right to postpetition lottery payments (In re Neto, 215 B.R. 939 (Bankr. D.N.J. 1997)); (2) insurance renewal commissions received postpetition if the actions to generate them were taken prepetition (In re Wicheff, 215 B.R. 839 (6th Cir. BAP 1998)); and (3) a debtor's Earned Income Tax Credits (EICs) for a tax year, prorated from date of petition filing, even though the EICs were not finalized until after the petition was filed (In re Montgomery, 224 F.3d 1193 (10th Cir. 2000))).

that loans would be repaid from FW if Stoneycreek failed; (3) GRHC's website listing FW as one of its "Projects" (App. at 1998); GRHC's email to industry members informing them that GRHC had sold FW, LW, and Stoney Creek; (4) GRHC's balance sheets including entries of thousands of dollars "Due from Forward" (App. at 2344, 2349, 2353); and (5) the MOU listing GRHC as the developer of FW.

Similar facts existed for GRHC's interest in LW: (1) LW had the same address for its principal place of business as GRHC; (2) Defendants' admission that they did not capitalize LW and instead funded LW with money borrowed from FW; (3) Defendants' significant time and resources spent developing LW using GRHC email accounts; (4) the MOU listing GRHC as the developer of LW; (5) GRHC's website listing LW as one of its "Projects" (App. at 1998); and (6) GRHC's email to industry members informing it had sold LW.

Between the uncontroverted facts that the district court outlined in its opinion and the Trustee's proffered evidence at the summary judgment stage, there was enough evidence that the district court should have let a jury decide whether GRHC was the developer of the LW and FW projects and whether it had an interest in the proceeds from their sale.

> b. *The district court erred when it found there was no genuine dispute that GRHC received a reasonably equivalent value in exchange for the transfer of FW and LW*

In order to succeed on three of the four KUFTA fraudulent transfer causes of action, the Trustee must show that, at the time GRHC transferred FW to Forward

6

Windpower Holding Company (FWHC) and LW to Lookout Windpower Holding Company (LWHC), it did not receive a reasonably equivalent value (REV) in exchange. A court makes three inquiries to examine REV: (1) whether value was given; (2) if value was given, whether it was given in exchange for the transfer; and (3) whether what was transferred was reasonably equivalent to what was received. In re Expert S. Tulsa, LLC, 522 B.R. 634, 652 (10th Cir. BAP 2014) (Tulsa I). Determination of REV is an issue of fact.[2] In re Expert S. Tulsa, LLC, 534 B.R. 400, 413 (10th Cir. BAP 2015) (Tulsa II). REV is not a simple calculation, but is instead measured by all direct and indirect benefits received by a seller.[3] Id. "A determination of whether a transfer involved the exchange of reasonably equivalent value requires consideration of whether or not the transferor's unsecured creditors were better off before or after the transfer."[4] Id.

The circumstantial evidence was at least enough for the REV question to survive summary judgment. There are several important pieces of evidence from the district court's recitation of uncontroverted facts: (1) assuming GRHC had an interest in FW and LW, Defendants took those interests from GRHC and give them to FWHC and LWHC; (2) there was no documentation of the transfer or value given for

---

[2] The only exception is when all the facts of a transfer are undisputed and the only issue is whether the transaction fit within a state's statutory parameters, which is not at issue in this case. Tulsa II, 534 B.R. at 413.

[3] There are four precepts used when construing REV: (1) fair market value is usually indeterminate, especially in foreclosure actions; (2) the market value is an important query nonetheless and serves as a starting point; (3) the property must be disposed of in accordance with state law; and (4) the court should consider all the facts of each case, one of which may be the market value. Tulsa II, 534 B.R. at 413.

[4] All of GRHC's creditors were unsecured.

7

the transfer; (3) Edison engaged GRHC to purchase LW and FW, so their value was more than zero; and (4) the properties were later purchased for a combined total of almost $13 million. This evidence shows that Defendants left GRHC's unsecured creditors in worse positions after the transfers of LW and FW without receiving REV. Tulsa II, 534 B.R. at 413. Thus, the district court erred when it granted summary judgment on the reasonably equivalent value issue.

### c. Defendants' alternative summary judgment arguments also fail

On appeal, Defendants assert two alternative reasons for why summary judgment in their favor was appropriate on the fraudulent transfer issue. Defendants' first reason is that the Trustee's lack of pleading § 550 was fatal to his fraudulent transfer claim. It was not. Pleading an incorrect statute is not fatal if the relevant facts are pled, and Defendants do not assert surprise or unfairness.[5] Thus, the Trustee's failure to plead § 550 was not fatal at the summary judgment stage.

Defendants' second reason is that there was insufficient evidence of insolvency. But because the jury properly found that GRHC was insolvent at several points during 2002, 2003, and 2004, and there was no indication that GRHC's financial condition ever improved after 2004, Defendants' claim that summary judgment should be alternatively granted on the insolvency issue also fails.

---

[5] See, e.g., Phillips v. Grendahl, 312 F.3d 357, 364 (8th Cir. 2002), abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007) ("[Plaintiff's] failure to identify the correct statutory section does not limit us in construction of his complaint, so long as the complaint pleads facts that state a cause of action under the correct section."); Albert v. Carovano, 851 F.2d 561, 571 n.3 (2d Cir. 1998) ("The failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters.").

*d. Conclusion on the fraudulent transfer claims*

The district court's granting of summary judgment in favor of Defendants on the fraudulent transfer claims is REVERSED and REMANDED for proceedings consistent with this order.

**II.     The district court did not err when it refused to grant Defendants' motion for judgment as a matter of law (Appeal 14-3253)**

On appeal, Defendants argue that there was insufficient evidence to show that GRHC was insolvent or likely to become insolvent on the dates of their salary payments (October 2002, March 2003, and April 2004).  Therefore, Defendants contend that the district court erred when it denied their Rule 50 motion for judgment as a matter of law.  A review of the record, however, shows that Defendants' challenge fails.

The Tenth Circuit reviews an appeal from a Rule 50 refusal de novo.  Elm Ridge Exploration Co., LLC v. Engle, 721 F.3d 1199, 1216 (10th Cir. 2013). "Judgment as a matter of law is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences which may support the nonmoving party's position."  Id. (citations omitted).

The Trustee offered enough evidence that a reasonable jury could find that Defendants breached their fiduciary duty on all three dates.  The Trustee also offered enough evidence for a reasonable jury to find that on the dates of those breaches, GRHC was insolvent because it was "unable to pay its debts as they fall due in the usual course of business."  See U.S. Bank Nat'l Ass'n v. U.S. Timberlands Klamath

9

Falls, L.L.C., 864 A.2d 930, 947 (Del. Ch. 2004) (vacated on other grounds).[6] Thus, the district court's denial of Defendants' Rule 50 motion is AFFIRMED.

### III. The district court did not err when it awarded prejudgment in favor of the Trustee (Appeal 14-3271)

On appeal, Defendants challenge the district court's award of prejudgment interest for the salary payments Defendants gave themselves in breach of their fiduciary duty to GRHC. After the jury returned its verdict, the Trustee filed a Fed. R. Civ. P. 59(e) motion to amend the judgment to include prejudgment interest. The district court granted that motion. The Tenth Circuit reviews a district court's ruling on a Rule 59(e) motion for abuse of discretion. Barber ex rel. Barber v. Colo. Dep't of Revenue, 562 F.3d 1222, 1228 (10th Cir. 2009).

The district court correctly awarded prejudgment interest in favor of the Trustee and correctly calculated that amount from the date of the Defendants' salary payments—i.e., the date of Defendants' breach of their fiduciary duty. Therefore, the district court's award of prejudgment interest in the Trustee's favor is AFFIRMED.

### CONCLUSION

The district court's granting of summary judgment in Defendants' favor (14-3241) is REVERSED and REMANDED for proceedings consistent with this order. The district court's denial of Defendants' motion for judgment as a matter of law (14-3253) is AFFIRMED. The district court's award of prejudgment interest in favor of

---

[6] Because GRHC is a Delaware corporation, Delaware law controls whether it was insolvent.

10

the Trustee (14-3271) is AFFIRMED.

Entered for the Court


David M. Ebel
Circuit Judge

11